MARK JOSEPH REICHEL, State Bar #155034
THE LAW OFFICES OF MARK J. REICHEL
655 University Avenue, Suite 215
Sacramento, California  95825
Telephone: (916) 974-7033
mreichel@donaldhellerlaw.com

Attorney for Defendant
ERIC MCDAVID

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ERIC MCDAVID,<br><br>    Defendant.<br>_____ | Case No.  CR.S-06-0035-MCE<br><br>DEFENDANT'S NOTICE OF MOTION AND ***MOTION TO DISMISS THE INDICTMENT BASED UPON VIOLATION OF THE DUE PROCESS CLAUSE/OUTRAGEOUS GOVERNMENT MISCONDUCT IN THE FBI AND THEIR INFORMANT IN THE GENERAL NATURE OF THE MANNER OF INVESTIGATION***; MEMORANDUM OF POINTS AND  AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR EVIDENTIARY HEARING.<br><br>Date: February 6, 2007<br>Time: 8:30 A.m.<br>Judge: Hon. Morrison C. England |

To: McGregor W. Scott, R. Steven Lapham, attorneys for plaintiff: PLEASE TAKE NOTICE that on the above date in the above entitled action, defendant, through counsel Mark J. Reichel, will move this Honorable Court to issue an order dismissing with prejudice the indictment in this matter.

This motion is made upon the grounds that the due

process clause prevents the prosecution of the defendant in the instant matter.

This motion is based on the United States Constitution, the Federal Rules of Criminal Procedure, the Points and Authorities submitted in support, and such argument and evidence of counsel at the hearing on the motion.

Respectfully submitted

DATED: December 19, 2006.

                             MARK J. REICHEL
                             ATTORNEY AT LAW
                             Attorney for defendant

                             /S/ Mark Reichel

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **SUPPORTING FACTS**[1]

In or about Summer of 2004, Anna, an FBI informant, befriend this defendant. The defendant was at that time traveling and attending political demonstration. Unbeknownst to the defendant, Anna was targeting people like the defendant, part of an FBI campaign to infiltrate groups who might be sympathetic to the "Earth Liberation Front" and the "Animal Liberation Front."

Anna immediately worked her charms with the defendant. Soon thereafter, defendant became romantically involved with Anna. Although there is no evidence in the discovery of sexual relations between the two, all persons who saw the two assumed they were a couple, and in fact, the other two co conspirators thought that the two were a couple. Anna encouraged this with McDavid, in many ways,. In fact, she

---

[1] This factual background comes from the discovery provided by the government, defense investigation conducted to date, and the anticipated testimony and evidence to be submitted at the hearing of the motion. The criminal complaint also sets forth the government's version of events in detail.

A succinct account is that the defendant Eric McDavid first met "Anna," not her real name, who was an untrained full time government informant in or about the Summer of 2004. Defendant was at that time traveling in Des Moines Iowa and was committing no crime but was actually "targeted" for contact and infiltration by Anna as part of a "profile" she used for the FBI to meet, maintain contact with, provide information on and collect data about. From 2004 until June of 2005, defendant McDavid and Anna kept in contact via e mail and otherwise. At some time, but at least by June of 2005, Anna informed the FBI that McDavid was involved in a conspiracy to commit certain crimes. McDavid was arrested in Anna's presence in January 2006 and charged in the instant case.

1  encouraged and urged him on, to write love letters and e
2  mails to her.  This occurred long before the operative
3  periods listed in the indictment, June of 2005 to January
4  2006. Nevertheless, it continued on-even more
5  intensely-throughout the period of the indictment.
6      Anna also was the only one of the three codefendants to
7  have any money whatsoever.  The other three were vagabonds,
8  without jobs and in essence homeless. None had a car. Anna,
9  throughout the term of the indictment, June of 2005 to
10 January 2006, paid for just about everything-including air
11 fair, laptop computers, food and all other necessaries of
12 life.
13     Anna spurred the group on repeatedly, especially when
14 the group was losing interest in any plans for "direct
15 action." As well, at times that she was not with the group,
16 Anna maintained her microphone on and recorded conversations
17 with others who were not suspects nor connected with these
18 three defendants.
19     The entire general manner of the investigation by Anna,
20 even without reference to the making of an explosive device,
21 which is the subject of its own motion, was in violation of
22 Attorney General Guidelines, FBI guidelines, and all commonly
23 accepted norms.
24                        **LEGAL ARGUMENT**
25     United States v. Barrera-Moreno, 951 F.2d 1089, 1091
26 (9th Cir. 1991) holds that a district court may dismiss an
27 indictment either to remedy outrageous governmental conduct
28 amounting to a due process violation, or under the court's

supervisory powers to remedy a constitutional violation, to protect judicial integrity, or to deter future illegal conduct.

It is best articulated that outrageous misconduct occurs when "...the challenged conduct violates commonly accepted norms of fundamental fairness and is shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 431-432 (1973). As such, Anna's conduct must be judged according to "commonly accepted norms..."

Numerous commentators have written recently to denounce the use of informants by police to become "romantic" with suspects while undercover. It is clearly a form of outrageous government misconduct.[2] In this vein, it is summed up best by one commentator that

> People need to assume a level of good faith and trust in intimate relations, and because privacy is an essential constitutional right, this type of law is the only one that makes sense. Even if the defendant was predisposed to committing the crime, it is not fair to allow law enforcement officials to use any type of means necessary to catch the defendant. The use of sex and intimate romance is a technique that is so distasteful, its use should be prohibited. Police activity must be regulated by something more than the law--it must respect the values of a community, and by forbidding this type of "intimate surveillance" this goal is accomplished. Government cannot afford to ignore what is important to human beings (trusting and intimate relationships). Abandonment of respect for such relationships "... will seriously diminish the worth of the social order to

---

[2] See Sexual Misconduct and The Government: Time to Take a Stand 48 Cleveland State Law Review 793 (2000) ("Finally, this Note concludes that the use of sexual or emotional intimacy by undercover agents/informants as an investigative tool is unconstitutional, outrageous and should be forbidden. There is no possible way to draw a line or develop a proper standard to apply when undercover agents use sexual conduct. This type of conduct is outrageous across the board and will lead to a lack of trust in law enforcement by all people in society. The solution is that this conduct should be prohibited altogether."); Official Indiscretions: Considering Sex Bargains with Government Informants 38 U.C. Davis Law Review 1643. There are numerous other such articles, but these two are recent and catalogue issues raised in the others.

people." Moreover, privacy has become an important constitutional right that has continuously been litigated, and the current trend leans toward ruling in favor of the individual's privacy. If the courts continue to recognize sex and intimacy as an appropriate investigative tool, then this recognition may actually serve as an incentive for sexual misconduct in the United States. In order to promote morality and decency in the world, sexual misconduct by government agents/informants must be forbidden. No other alternatives are available.

See Sexual Misconduct and The Government: Time to Take a Stand 48 Cleveland State Law Review 793 (2000)

## **CONCLUSION**.

For the reasons stated above, defendant respectfully asks that the Court grant his motion to dismiss the indictment with prejudice.

Respectfully submitted

DATED: December 19, 2006.

                                  MARK J. REICHEL
                                  ATTORNEY AT LAW
                                  Attorney for defendant

                                  /S/ Mark Reichel